COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

James E. PEURIFOY, Paul V. Stines and Betty O. Stines, John S. Hall and Doris D. Hall, Respondents.

No. 7479.

United States Court of Appeals Fourth Circuit.

Argued Oct. 18, 1957.

Decided Nov. 11, 1957.

Writ of Certiorari Granted May 19, 1958.

See 78 S.Ct. 996.

484

Kenneth E. Levin, Attorney, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Attorney, Department of Justice, Washington, D. C., on brief), for petitioner.

Daniel R. Dixon, Raleigh, N. C., for respondents.

Before SOPER and HAYNSWORTH, Circuit Judges, and THOMPSON, District Judge.

HAYNSWORTH, Circuit Judge.

We have for review a decision of the Tax Court [1] which held that the Commissioner had improperly assessed deficiencies of income tax to three construction workers. The claimed deficiencies arose upon the disallowance by the Commissioner of living expenses of the three workers while each was employed upon a construction project at Kinston, North Carolina, and of the travel expense of each when, upon the termination of his employment, he returned to his residence.

The taxpayer, Peurifoy, an unmarried individual, maintained a residence at Kure Beach near Wilmington, North Carolina. He resided in this house when employed in the vicinity of Wilmington and, at other times, used it on week ends if the place of his employment was not unreasonably distant.

Peurifoy was first employed as a pipe welder in the construction of a paper mill at Acme, North Carolina. After approximately seven months, he left that employment to work on a new plant for the duPont company under construction near Kinston, North Carolina. He was employed on that project for approximately 20½ months ending November 20, 1953. Thereafter he was employed for approximately 17½ months in the construction of an electric generating plant at Mount Misery, North Carolina, for approximately 3 months in construction work on the Marine Base at Cherry Point, North Carolina, for two weeks on a paper mill project near Acme, North Carolina, and for one week in Barberton, Ohio. The record does not indicate whether any of these employments were terminated for cause, in consequence of completion of the work or for reasons personal to the taxpayer.

The taxpayer, Stines, is married and, beginning sometime in 1952 maintained a residence for his family in Raleigh, North Carolina. A journeyman plumber, he has had approximately thirty jobs since 1947 ranging in duration from two weeks to more than a year. On March 26, 1952, he was employed to work on the duPont plant near Kinston and left 12½ months later, on April 10, 1953. It is stipulated that he left this employment for personal reasons.[2]

The taxpayer, Hall, is married and about 1950 acquired a house for his family in Raleigh, North Carolina. He sold this house in the latter part of 1953, but his family continued to reside there until early in 1954. At the time of the stipulation, he was a resident of Knightsdale, North Carolina.

After working for approximately a year in the construction of a textile plant at Neuse, North Carolina, he was employed as a welder in the construction of the duPont plant near Kinston. This employment began October 21, 1952, and

1. Peurifoy v. Commissioner, 27 T.C. 149.

2. Stines testified that the "personal reason" for his leaving was that he was discharged after walking off the job during working hours to attend to a personal errand.

ended on July 10, 1953, when he resigned for reasons personal to him. Subsequently, he was employed in the construction of (1) a factory at Raleigh, North Carolina, for 7½ months, (2) an atomic energy plant at Portsmouth, Ohio, for 3½ months, (3) an atomic energy plant near Aiken, South Carolina, for 2 weeks, (4) a chemical plant at Hopewell, Virginia, for 7 weeks, (5) a textile plant at Tarboro, North Carolina, for 1 month, (6) an electric generation plant at Moncure, North Carolina, for 3 months and (7) the same Moncure plant (for a different contractor) in which work he was engaged at the time of the stipulation. He resigned for personal reasons from his jobs at Portsmouth, Aiken and Hopewell as well as from that at Kinston.

While employed at the duPont plant near Kinston, Peurifoy boarded at a house, approximately 1 mile from the plant site, though he went to Kure Beach on week ends. The boarding house is approximately 122 miles from his house at Kure Beach and approximately 102 miles from Wilmington which he claims as his tax home.

During the period of their employment at the duPont plant, Stines and Hall rented rooms in Kinston, though on week ends they went to Raleigh where their families resided. Kinston is approximately 78 miles from Raleigh.

The record does not show when the construction of the duPont plant near Kinston began or when it was completed. Nor does it disclose the period of employment of welders, pipe welders or plumbers, the trades practiced by these taxpayers. It does reveal that Peurifoy and Stines were employed on this project in March 1952. Hall was not employed there until October 1952, but he had been engaged in other employment until then. We are informed that when Stines and Hall quit their jobs at Kinston in April and July 1953, respectively, they did so for personal reasons, not because work for people of their trades was no longer available. The reason for Peurifoy's leaving in November 1953 is not mentioned. It would appear from these facts, however, that it was a construction project of some size and of substantial duration.

The only testimony bearing upon the duration of the work was that of Hall who testified that on all construction jobs, including that at Kinston, they were not guaranteed a job for any specific period nor were they told by the employer how long the work was expected to last. There was talk among the workers of the probable duration of the work. He did not mention, however, what his, or their, expectation was with respect to the duPont project near Kinston.

The only other circumstance considered by the Tax Court as relevant was the membership of Peurifoy in a union local with headquarters in Wilmington and of Stines and Hall in a union local with headquarters in Raleigh, the fact that each received referrals from his local union and the general preference of each for employment in the vicinity to employment at more distant points. But if subjective considerations of personal preference have any bearing upon the problem, it is difficult to find in these considerations any distinction between the case of the construction worker, who, without the assistance of a local union, seeks and obtains employment preferably in the vicinity of the residence of his family but at other times at more distant points. It is stipulated that a union referral is not tantamount to employment and that the individual worker must apply to the contractor at the job site for employment. Upon that application, he is employed or not depending upon the needs and preferences of the employer.

▆ Upon these facts, we think the Tax Court was in error in finding that the employment of these taxpayers on the duPont project at Kinston was temporary and in concluding that their maintenance expense while there and the expense of travel at the termination of their employment was deductible under section 23(a) (1) (A) of the Internal

Revenue Code, 26 U.S.C.A. § 23(a) (1) (A).[3]

Work in the heavy construction industry, by its very nature, has a degree of impermanence. Employment is usually for each job only and lasts no longer than the need at that project for the particular skill of the individual employee. Upon many of the larger projects, however, such need, and the actual employment of an individual, may last for several, even many, years. Other projects may be of comparatively short duration. It is also a characteristic of the industry, as shown in the stipulations in this case, that upon larger construction projects outside the larger metropolitan centers, the local supply of the necessary skills must be greatly augmented by workers coming from other places. Work in the industry, therefore, is, to some extent, transient as well as impermanent.

Construction workers are not the only ones, however, who find it necessary or profitable to move or seek employment from place to place, and the Tax Court, in its opinion in these cases, recognizes that the transient and impermanent aspect of work in heavy construction does not itself distinguish construction work from other employment or hold the answer to our problem. Indeed these characteristics of the industry tend to strip from a remote residence elements essential to its status as the sole "tax home."

█ When a taxpayer accepts employment at a place removed from the residence he maintains for his family, his travel and maintenance expense is not usually deductible under § 23(a) (1) (A). Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66

S.Ct. 250, 90 L.Ed. 203. Indeed under the rule of Commissioner of Internal Revenue v. Flowers the expense, in order to be deductible, must be "required by the exigencies" of the employer's business, not those of the calling of the employee. "The job, not the taxpayer's pattern of living, must require the travel." Carragan v. Commissioner, 2 Cir., 197 F.2d 246, 249. That an employee for reasons personal to himself and his family maintains a home at a distance from his business does not serve the business of the employer and ordinarily his travel expense and the expense of his maintenance at either place is not deductible. Commissioner of Internal Revenue v. Flowers, supra, Barnhill v. Commissioner, 4 Cir., 148 F.2d 913, 159 A.L.R. 1210.

Where, however, an individual, who has a well established tax home, accepts temporary employment of short duration away from his tax home, it has been held that his travel and maintenance are allowable deductions under § 23(a) (1) (A) and are not "personal, living, or family expenses" within the meaning of § 24(a) (1) even though such expenses are not incurred for the benefit of the employer. Coburn v. Commissioner, 2 Cir., 138 F.2d 763; Schurer v. Commissioner, 3 T.C. 544; Leach v. Commissioner, 12 T.C. 20. If we assume the validity of this exception to the rule of Commissioner of Internal Revenue v. Flowers, as applied to one not self-employed, it is essential that the employment away from the established tax home shall be temporary in contemplation at the time of its acceptance and not indeterminate in fact as it develops. However justified he may be from a subjective or personal point of view in maintaining a residence away from his post

3. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
"(a) Expenses.
"(1) Trade or business expenses.
"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any

trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *."

of duty, his travel and maintenance expense at his post of duty is not an ordinary and necessary business expense within the meaning of § 23(a) (1) (A) if the employment is of substantial or indefinite duration. Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203; Ford v. Commissioner, 4 Cir., 227 F.2d 297; Carragan v. Commissioner, 2 Cir., 197 F.2d 246; Andrews v. Commissioner, 4 Cir., 179 F.2d 502; Ney v. United States, 8 Cir., 171 F.2d 449; Bercaw v. Commissioner, 4 Cir., 165 F.2d 521.

When the taxpayers in these cases went into the Tax Court, carrying the burden of showing that the Commissioner's determination was incorrect, they produced nothing to show that their employment on the duPont project was not of indefinite duration. It is clear that two of them left that employment for personal reasons when work was still available, while the third left after 20½ months for an undisclosed reason. For aught that appears, work might have been available there for all three for much longer than 20½ months. While each of them may have accepted other employment at other times which was temporary, that does not tend to prove that this employment was temporary and not of substantial or indefinite duration. And though subjective consideration of the reasonableness of their moving their residences to their post of duty may have some bearing in determining the applicability of § 24(a) (1), it does not establish the deductibility of maintenance expenses under § 23(a) (1) (A). Bercaw v. Commissioner, supra; Warren v. Commissioner, 13 T.C. 205; Whitaker v. Commissioner, 24 T.C. 750.

The question of deductibility of such expenses is ordinarily one of fact. When the conclusionary finding that the work was temporary and maintenance expense deductible was clearly erroneous, however, it is our right and duty to reverse it.

Reversed.