RICHARD A. PORTILLO, SR., AND PRISCILLA D. PORTILLO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Portillo v. Commissioner
Docket No. 2463-80.
United States Tax Court
T.C. Memo 1982-518; 1982 Tax Ct. Memo LEXIS 228; 44 T.C.M. (CCH) 1085; T.C.M. (RIA) 82518; September 13, 1982. Lonnie G. McGee, for the petitioners. Kevin M. Bagley, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code *229 of 1954 and Rule 180. [1] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. [2]
OPINION OF THE SPECIAL TRIAL JUDGE RAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1977 in the amount of $1,031.00. By the express consent of the parties pursuant to Rule 41(b), the issues for decision [3] are (1) whether under section 162 petitioners are entitled to deduct expenses incurred in traveling between petitioner-husband's residence and his place of work and (2) whether the travel pay received by petitioner-husband is includable in his gross income. [4]
*230 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by reference. Petitioners resided in Ramona, California, when the petition in this case was filed. Petitioner Richard A. Portillo, Sr. (petitioner), is an ironworker and a member of Ironworkers Local 229 (union) in San Diego, California. He has been a member of that local since 1977, having been a member of the ironworkers' union in the eastern part of the country prior to that time. Petitioner was employed as an ironworker by Bechtel Power Corporation (Bechtel) for the period from July 15, 1976, through the date of trial at the San Onofre Nuclear Generating Station (SONGS), except for October 8 through October 28, 1976. He was terminated for that brief period because he was engaged in an illegal work stoppage. Petitioner secured his employment through his union. Bechtel had contracted with Southern California Edison to construct two nuclear reactor facilities (Units 2 and 3) at the SONGS site in February of 1974. Construction actually began in May, 1974. When the contract was executed, Unit 2 was originally scheduled to have been completed *231 64 months from the start of construction and Unit 3 was originally scheduled to have been completed 15 months after completion of Unit 2. During construction of Units 2 and 3, the estimated time of completion was updated once every six months based on actual construction experience. As of the time of trial, Bechtel's construction work on Units 2 and 3 had not yet been completed. During the entire period of construction on Units 2 and 3, Bechtel had substantial labor needs requiring ironworkers among others. When Bechtel required ironworkers, an officer of Bechtel would contact a representative of the union and request that a certain number of workers be dispatched to the SONGS site. These employees were hired by Bechtel on an "as needed" basis. Such an employee could lose his job at the SONGS site by a layoff pursuant to a reduction-in-force, by being terminated for cause, or by a voluntary termination. The decision to lay off any given employee pursuant to a reduction-in-force was based on criteria established by Bechtel and was in the sole discretion of Bechtel. In making layoffs, the job performance of any given employee was the most critical factor in determining whether *232 that employee would be laid off. In short, the worst workers would be laid off first and the better workers would be laid off last. In determining which employees would be laid off and which would stay, no consideration was given to the employee's seniority on the job, seniority with the union, or union status (i.e., local members vs. member working on a "travel card"). Representatives of Bechtel met periodically with representatives of the union to discuss construction progress and anticipated labor requirements. When petitioner was hired to work at the SONGS site, he claimed he had "no idea" how long his employment would last and believed his employment would last only two or three months. No one from the union told petitioner that Bechtel was hiring him on a temporary basis. No representative of Bechtel ever told petitioner, or any other trade employee, that he was being hired on a temporary basis. A trade employee, such as petitioner, could expect to be employed at the SONGS site by Bechtel as long as work was available and as long as the employee maintained a good job performance. During the entire period of petitioner's employment, Bechtel had substantial actual and *233 forecasted labor requirements for ironworkers. Bechtel highly regarded petitioner's job performance as an ironworker as indicated by the fact that he was never laid off. Pursuant to the union agreement under which petitioner was employed at the SONGS site, petitioner was entitled to $14.00 in travel pay for every day he worked in 1977. This travel pay is sometimes referred to as subsistence pay. The amount was based on the distance from the job site to San Diego City Hall. Petitioner would have received the same amount of travel pay regardless of where he actually resided. During 1977, petitioner resided 65 miles from the SONGS site. He received travel pay from Bechtel in the amount of $3,332.00 and reported it as income on his original 1977 Federal income tax return. Petitioner incurred $4,144.00 in expenses in traveling to and from the job site during 1977. No deduction for travel expenses was taken on the original 1977 return. By an amended Federal income tax return for 1977, petitioner claimed an adjustment to income of $4,245.00 [5] as employee business travel expense incurred in traveling between his residence and the SONGS site. *234 Respondent disallowed the $4,245.00 claimed for travel on the basis that it was not an ordinary and necessary business expense under section 162 and that daily travel expense between petitioner's residence and his job site is a nondeductible personal expense under section 262. OPINION Petitioner contends that the travel expenses are deductible under section 162. [6] For the reasons stated below, we agree with respondent that they are not deductible. Although we have held that automobile expenses in commuting between the taxpayer's residence and even a temporary jobsite outside a taxpayer's normal area of employment are not deductible (see Turner v. Commissioner,56 T.C. 27 (1971) (reviewed by the Court), vacated and remanded on respondent's motion by an unpublished order (2d Cir. March 21, 1972)), [7] that issue has not been presented *235 to us in this case. See McCallister v. Commissioner,70 T.C. 505 (1978). Instead, respondent takes the position that if petitioner's employment was temporary his transportation expenses between his home and his jobsite are deductible.[8] We shall limit our consideration to the "temporary" versus "indefinite" issue. Since we agree with respondent that petitioner's employment at SONGS was not temporary and therefore his transportation expenses are not deductible, any conflict with Turner v. Commissioner,supra, is mooted. McCallister v. Commissioner,supra.
The burden of proving that his employment was temporary rests with petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). *236 Whether a job is temporary or indefinite is purely a question of fact. This Court considers a job to be temporary if it is expected to last only a short period of time and not a substantial or indefinite period of time. Tucker v. Commissioner,55 T.C. 783 (1971); McCallister v. Commissioner,supra.Employment which is originally temporary may become indefinite due to changed circumstances or the passage of time. Norwood v. Commissioner,66 T.C. 467, 470 (1976); Kroll v. Commissioner,49 T.C. 557, 562 (1968). The Ninth Circuit has relied on a slightly different analysis when assessing the temporary nature of employment. Objecting to the restrictive method used in applying the "temporary" versus "indefinite" distinction, that court has sought to ascertain whether there was a reasonable probability known to the taxpayer that his employment would be for "a long period of time" and drew a distinction between "substantially short" and "substantially long" employment. Harvey v. Commissioner,283 F.2d 491, 495 (9th Cir. 1960), revg. and remg. 32 T.C. 1368 (1959); Wright v. Hartsell,305 F.2d 221, 224, fn. 1 (9th Cir. 1962). *237 In later cases, the Ninth Circuit has used the term "indefinite" (see Wills v. Commissioner,411 F.2d 537, 541 (9th Cir. 1969), affg. 48 T.C. 308 (1967)), and has stated that the taxpayer's later awareness that an employment period would be indefinite "cannot be held to be an insignificant [factor]." Doyle v. Commissioner,354 F.2d 480, 482 (9th Cir. 1966), [9] affg. T.C. Memo. 1964-110; see Commissioner v. Peurifoy,254 F.2d 483 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958). *238 Despite any distinction that may still exist between this Court's analysis and that of the Ninth Circuit, both analyses lead to the conclusion that petitioner did not hold a temporary job away from home within the meaning of section 162 in 1977. During 1977 petitioner was working at the SONGS site. He has worked at SONGS from July 15, 1976, to the time of trial, except for an insignificant three-week break in service. It is clear that SONGS was an extensive program and that construction of Unit 2 and Unit 3 was contemplated to continue into the indefinite future. An official from petitioner's union testified that the SONGS construction project was not a typical job in its duration "[b]ecause it is always there." He further confirmed that this project has lasted substantially longer than any other project undertaken by the union. Petitioner candidly admitted that he had never worked as an ironworker for as long as he worked at SONGS. Far from constituting a place of temporary employment, SONGS was petitioner's principal indefinite place of employment. The size of the entire project at SONGS was such that petitioner reasonably could, and we find that in 1977 he did, anticipate *239 continued employment on Unit 2 or Unit 3 for an indefinite period of time. He was employed for a continuous period of over 66 months, except for the brief break in service due to his participation in an illegal work stoppage in October 1976. We are convinced that during the taxable year petitioner expected continued employment at SONGS for an indefinite period of time. This factor distinguishes this case from Frederick v. United States,603 F.2d 1292 (8th Cir. 1979), upon which petitioner relies. [10]
We conclude by holding that petitioner's expenses incurred in his daily travel to his indefinite job at SONGS were personal, nondeductible expenses. Neal v. Commissioner,681 F.2d 1157 (9th Cir. 1982), affg. T.C. Memo. 1981-407; section 262. There is no question but that the travel pay was properly included on petitioner's W-2 form and in his income on his return. Section 61. This section defines gross income to include all gains, regardless of their source. By defining gross income in such broad terms in section 61, Congress intended to tax all gains except *240 those specifically exempted under other sections. Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). In another case, the Supreme Court considered whether cash payments, designated as meal allowances, were income under section 61. Commissioner v. Kowalski,434 U.S. 77 (1977). The Supreme Court found that these cash payments were additions to wealth, clearly realized, and over which the taxpayer had complete control. In the absence of a specific exemption, the Supreme Court held these payments were income under section 61. The Ninth Circuit stated in Coombs v. Commissioner,608 F.2d 1269, 1272 (1979), affg. in part and revg. in part on other grounds 67 T.C. 426 (1976), that in light of Kowalski: "the taxpayers have properly abandoned any claim to an exclusion from income of the allowances received from their employers." Even though petitioner did not "properly" abandon his claim here, for the reasons stated above we sustain respondent's position that the travel pay received by petitioner was includable in his taxable income. Coombs v. Commissioner,67 T.C. 426, 470-472 (1976), affd. in part *241 and revd. in part on other grounds 608 F.2d 1269 (9th Cir. 1979); Turner v. Commissioner,supra.See also Commissioner v. Kowalski,supra.
Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. By stipulation, the following parties have agreed to be bound to the resolution of the issues in this case when the decision becomes final: Ruiz v. Commissioner, D.N. 4876-80; Setzke v. Commissioner, D.N. 17834-80; LaBarron v. Commissioner, D.N. 17835-80; Kershaw v. Commissioner, D.N. 17837-80; Hickey v. Commissioner, D.N. 20529-80; Richardson v. Commissioner, D.N. 22976-80; Dawson v. Commissioner, D.N. 22977-80; Martin v. Commissioner, D.N. 22978-80; Madrid v. Commissioner, D.N. 22980-80; Stone v. Commissioner, D.N. 22983-80; Kershaw v. Commissioner, D.N. 10240-81; Esqueda v. Commissioner, D.N. 10414-81; Rios v. Commissioner, D.N. 10525-81; Moreno v. Commissioner, D.N. 14346-81; Green v. Commissioner, D.N. 18305-81; and Salazar v. Commissioner, D.N. 18211-81S. ↩
4. Counsel for the parties agreed to try four test cases involving these issues at one session of this Court. The test cases were selected on the basis of the period of time worked. After reviewing the facts in each of the four test case records, we are convinced that one test case would have sufficed. See Cushman v. Commissioner,T.C. Memo. 1982-519; Morgan v. Commissioner,T.C. Memo. 1982-520; and Alvarez v. Commissioner,T.C. Memo. 1982-521↩; all issued on the same day this opinion was issued.
5. The record does not disclose why this amount is $101.00 greater than actual expenses.↩
6. Section 162 provides in pertinent part: (a) IN GENERAL.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including (2) traveling expenses * * * while away from home in the pursuit of a trade or business * * *.↩
7. See also Commissioner v. Flowers,326 U.S. 465 (1946); Sanders v. Commissioner,439 F.2d 296 (9th Cir. 1971), affg. 52 T.C. 964 (1969); United States v. Tauferner,407 F.2d 243↩ (10th Cir. 1969). 8. An explanation of respondent's position is set forth in 2 Stand. Fed. Tax Rept. (CCH) par. 1352.144 (1982); see also Fed. Taxes (P-H) par. 11,426 (1982).↩
9. In Harvey v. Commissioner,283 F.2d 491 (9th Cir. 1960), the Ninth Circuit held that a temporary employee is permitted to deduct all his travel expenses away from home because this helps alleviate the double burden of living expenses incurred because of the exigencies of business. To the same effect, Kroll v. Commissioner,49 T.C. 557 (1968). But since petitioner was living at home in the ordinary sense of the word, there was no double burden or duplicative expense. There was a single expense of driving to work similar to that of most commuters. Nevertheless, the Ninth Circuit recently applied the temporary versus indefinite test in sustaining this Court's determinations in finding that a construction worker's employment was not temporary in a case similar to the one before us. Neal v. Commissioner,681 F.2d 1157 (9th Cir. 1982), affg. T.C. Memo. 1981-407. The Ninth Circuit also suggested in Doyle v. Commissioner,354 F.2d 480, 482 (9th Cir. 1966), that a nine-month period might logically afford a reasonable measure of "a long period of time" as used in Harvey v. Commissioner,supra.↩
10. See Weston v. Commissioner,T.C. Memo. 1981-166↩.