GARY E. McLELLAN and SHIRLEY McLELLAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McLellan v. Commissioner
Docket No. 10894-87
United States Tax Court
T.C. Memo 1990-412; 1990 Tax Ct. Memo LEXIS 429; 60 T.C.M. (CCH) 397; T.C.M. (RIA) 90412; August 6, 1990, Filed *429 Decision will be entered for the respondent. Dennis L. Marvin, for the petitioners. Lisa M. Oshiro, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined *430 deficiencies in petitioners' Federal income taxes for 1982 and 1983 in the amounts of $ 2,328 and $ 2,798, respectively. After a concession by petitioners, the issues for decision are: (1) whether petitioner Gary E. McLellan incurred deductible traveling expenses while away from home in the pursuit of a trade or business; and if so, (2) whether petitioners have substantiated the expenses. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Seattle, Washington, at the time their petition was filed. Petitioners have owned a home in Seattle since 1966. Prior to the years in issue, Gary E. McLellan (hereinafter petitioner), his wife, and their two children resided at their home in Seattle. Petitioner, a professional painter since 1961, is a member of the International Brotherhood of Painters and Allied Trades (the Union). Beginning in 1979, he was elected financial secretary to the Union at an annual salary of $ 40,000 per year. However, because of a position he took on a controversial issue in 1981, petitioner was voted out of office *431 in the 1981 election. Petitioner thereafter began employment as a painter at a Seattle brewery at $ 10 per hour, which was less than he earned with the Union, but it was the only employment petitioner was able to locate near his home. In April 1982, petitioner left the brewery to begin employment at the Cascade Job Corps Center in Sedro Woolley, Washington, (the Center) as a preapprentice painting instructor at $ 17.50 per hour. The Center is affiliated with the Job Corps organization established in 1964. Sedro Woolley is 75 miles from Seattle. The Center offers vocational training in various construction areas. The purpose of the program in which petitioner was employed was to provide work experience and training for unemployed and disadvantaged youths in the craft of painting and related skills. Petitioner was informed of the Job Corps position at the Center by a Union member, who was frequently approached by representatives of the Center when instructors were needed. The Union was responsible for providing instructors to the Center's vocational training program. The term of petitioner's employment was dependent on Federal funding and thus was indefinite. Although the *432 funding was not guaranteed at any time, petitioner was not aware that funding had not been granted for the program. Moreover, he was unaware of any set date at which his employment with the program would be terminated. When he began working at the Center, petitioner was given a copy of the government contract with the Union, which authorized funding for the program through the fiscal year ended September 30, 1982. Petitioner assumed that the contract meant that he would be employed for only six months. At the time he began his employment, petitioner learned from other instructors at the Center that the vocational training program "was on a very shaky base"; that funding was being questioned; that other programs were being put on probation; that the program at the Center might be closed by the State Legislature; and that a mini-prison might be located nearby. The head of the Department of Labor had stated that if a mini-prison were built nearby, the program at the Center would be terminated because the programs would be incompatible. Petitioner read a newspaper article published on May 12, 1982, which indicated that all programs at the campus where petitioner was employed were *433 "in line to be wiped out with the next round of budget cuts." For fiscal year ended June 30, 1983, petitioner's vocational training program was put on temporary probation by the Department of Labor. Because the number of students receiving instruction from petitioner was low, his program was targeted for closing. A sign painting program at the Center, which was located next to petitioner's general painting program, had been placed on the same type of probation as petitioner's program, and was subsequently transferred to another training center. A governmentally imposed probationary period typically lasts six months to one year. However, petitioner's program remained on probation through June 1984, and he was still employed by the program in March 1988. While working at the Center during the week, petitioner resided in a trailer, which he parked in a Sedro Woolley park or at the Center. Petitioner commuted by car between Sedro Woolley and Seattle, where his wife and children continued to reside, on Fridays and Mondays. In addition, during April, May, and June of each year, he commuted between Seattle and Sedro Woolley to procure bids for equipment and materials and establish *434 contacts with apprenticeship coordinators who would place his graduating students. Since losing the Union election in 1981, petitioner wanted to regain his position as financial secretary. In an effort to gather support for his candidacy, he campaigned for the position during 1982 and 1983 by calling other Union members and writing a campaign letter. He ran for reelection in 1984, the first election held since he was voted out of office in 1981. Because he was running for election, he was required to attend 75 percent of the Union meetings which were held in Seattle. Therefore, he commuted between Sedro Woolley and Seattle for these meetings. He was not reelected. While working at the Center, petitioner maintained the home in Seattle, ran for reelection to his former Union position, continued to look for jobs in Seattle that paid more than $ 10 per hour, and continued commuting between Sedro Woolley and Seattle because he felt his employment with the program would be terminated. His wife shared his belief that his employment with the program was temporary. She was reluctant to "pull up stakes" and move from her home in Seattle. Petitioners filed joint Federal income tax *435 returns for 1982 and 1983 on which they claimed employee business expenses incurred in petitioner's employment at the Center in the respective amounts of $ 6,635 and $ 8,837. In 1982 and 1983 the deductions included $ 3,800 and $ 5,225, respectively, for meals while away from home. Petitioners computed the meal deduction based upon the fact that Mrs. McLellan gave petitioner $ 150 per week for pocket money which he used to buy his meals and incidentals. Based upon this weekly amount, they estimated that petitioner spent $ 20 each weekday for meals. The 1982 and 1983 deductions also included $ 2,835 and $ 3,612, respectively, for car expenses which were based upon 13,800 miles at 20 cents per mile in 1982 and 15,000 miles at 20.5 cents per mile in 1983, plus $ 75 and $ 125 in 1982 and 1983, respectively, for "business part of car interest, parking fees, tolls, and State and local taxes." In determining the mileage figures, they allocated 75 percent of the total use of the car to business for the periods of time petitioner was employed at the Center. The government contract with the Union relating to the program in which petitioner was employed provided: "The Government shall *436 also allow, as reimbursable costs to the Contractor [the Union] the reasonable and necessary transportation expenses of instructor personnel in connection with contract performance." Respondent disallowed petitioner's claimed deductions. OPINION The first issue is whether petitioner is entitled to deduct claimed employee business expenses pursuant to section 162(a)(2) [1] for expenses incurred in connection with an automobile and for meals. Petitioner has the burden of proving that the expenses were incurred and that such amounts satisfy the requirements of section 162(a). Welch v. Helvering, 290 U.S. 111 (1935); Rule 142(a). Section 162(a)(2) allows a taxpayer to deduct his "ordinary and necessary" expenses for travel, including amounts expended for meals and lodging "while away from home in *437 the pursuit of a trade or business." On the other hand, personal, living or family expenses are not deductible. Sec. 262. The purpose of the deduction is to mitigate the burden upon the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional living expenses. Tucker v. Commissioner, 55 T.C. 783, 786 (1971); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). To qualify under section 162(a)(2), the claimed expenses must meet three prerequisites. They must be (1) reasonable and necessary; (2) incurred while away from home; and (3) incurred in the pursuit of a trade or business. Sec. 162(a)(2); Commissioner v. Flowers, 326 U.S. 465, 470 (1946). Transportation expenses between the taxpayer's personal residence and his place of employment are commuting expenses which are not deductible. Commissioner v. Flowers, supra; Sanders v. Commissioner, 439 F.2d 296, 299 (9th Cir. 1971); Smith v. Warren, 388 F.2d 671, 672 (9th Cir. 1968). Respondent's primary contention is that the expenses in question herein were not *438 incurred "while away from home." It is well settled that the taxpayer's home for purposes of section 162(a)(2) is the vicinity of his principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. Mitchell v. Commissioner, 74 T.C. 578, 58 581 (1980); Jones v. Commissioner, 54 T.C. 734, 740 (1970), affd. 444 F.2d 508 (5th Cir. 1971); Owens v. Commissioner, 50 T.C. 577, 581 (1968). However, an exception to this general rule was stated in Commissioner v. Peurifoy, 254 F.2d 483 (4th Cir. 1957), affd. 358 U.S. 59 (1958). [2] If the taxpayer can prove that his employment is temporary, his personal residence will be considered to be his tax home. When a taxpayer with a well-established tax home accepts temporary employment away from home, his living expenses may be deductible because it would not be reasonable for him to move his home simply to be nearer to short-term employment. Commissioner v. Peurifoy, supra; Kasun v. United States, 671 F.2d 1059 (7th Cir. 1982); *439 Leach v. Commissioner, 12 T.C. 20, 21 (1949). If, for personal reasons, one chooses to live far from his place of employment, the resulting travel costs are nondeductible personal expenses. For travel expenses to be deductible, "The job, not the taxpayer's pattern of living, must require the travel." Commissioner v. Peurifoy, 254 F.2d 483, 486 (4th Cir. 1957), affd. 358 U.S. 59, 79 (1958) (quoting Carragan v. Commissioner, 197 F.2d 246, 249 (2d Cir. 1952)). But if the employment is indefinite, rather than temporary, the expenses are not deductible. Commissioner v. Peurifoy, supra.
*440 No single element is determinative of the ultimate factual issue of whether employment is temporary. There are no rules of thumb, durational or otherwise, to distinguish temporary from indefinite employment. Norwood v. Commissioner, 66 T.C. 467, 470 (1976). However, several criteria are considered important in determining whether employment is indefinite rather than temporary. McCallister v. Commissioner, 70 T.C. 505 (1978). These criteria include the expected duration of employment and the actual duration of employment. McCallister v. Commissioner, supra.
Petitioner stated that near the time he began employment at the Center he received a copy of a contract between the government and the Union. The contract specified a single annual funding period, which extended through September 30, 1982. However, he did not offer any persuasive evidence to prove the limited nature of his employment term subsequent to September 30, 1982. Instead, he relied upon rumors circulated by other instructors, the fact that the situs of another program had been changed and the fact that his program had been put on probation in concluding his employment *441 was temporary. Moreover, he was never aware of any fixed time period in which his employment would terminate. The fact that petitioner had no assurance as to how long his job would last is not determinative as to the temporariness of the employment. McCallister v. Commissioner, supra at 510. Even if it is known that a particular job may or will terminate at some future date, that job is not temporary if it is expected to last a substantial or indefinite period of time. Norwood v. Commissioner, supra at 469; Jones v. Commissioner, supra.Employment is considered to be indefinite, rather than temporary, unless termination within a short period can be foreseen. Albert v. Commissioner, 13 T.C. 129, 131 (1949). In Albert, we held that the taxpayer's job was indefinite even though the taxpayer was warned that she might be transferred upon short notice and she was advised not to enter into leases or other commitments which would inconvenience her transfer from one station to another. Based upon the record herein, we find that the expected duration of petitioner's employment at the Center was indefinite *442 rather than temporary. The fact that petitioner intended to return to work closer to home when it became available does not change this result. See Kasun v. United States, supra; Neal v. Commissioner, 681 F.2d 1157 (9th Cir. 1982), affg. T.C. Memo. 1981-407. The actual duration of petitioner's employment further indicates that petitioner's employment was indefinite rather than temporary. He began his employment at the Center in April 1982, and continued in such employment at least until May of 1988, a period of over six years. Since petitioner's employment at the Center was indefinite, he has failed to meet the second prerequisite to deductibility under section 162(a)(2), i.e., that the expenses were incurred while away from home. With respect to the first prerequisite to deductibility, i.e., that the expenses must be reasonable and necessary, respondent argues that petitioner's transportation expenses are not deductible because the contract between the government and the Union provided for reimbursement of such expenses. If an employee incurs expenses during the course of his employment for which he could have been reimbursed *443 and fails to file a claim, such expenses are not deductible as ordinary and necessary business expenses under section 162. Heidt v. Commissioner, 274 F.2d 25, 28 (7th Cir. 1959), affg. a Memorandum Opinion of this Court; Stolk v. Commissioner, 40 T.C. 345, 356 (1963), affd. 326 F.2d 760 (2d Cir. 1964); Podems v. Commissioner, 24 T.C. 21, 23 (1955). From the reimbursement language contained in the government contract, we are unable to discern whether the right to reimbursement is restricted solely to the Union or extends to its members as well. However, in order for the claimed transportation expenses to be deductible, petitioner must establish that he was not entitled to reimbursement. He has failed to do so. Finally, respondent argues that petitioner failed to substantiate his claimed employee business expenses. Section 274(d) provides that no deduction shall be allowed under section 162 for travel expenses away from home "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement, (A) the amount of such expense * * *, (B) the time and place of the travel, * *444 * * [and] (C) the business purpose of the expense * * *." Section 1.274-5(c)(2), Income Tax Regs., provides that "adequate records" shall consist of documentary evidence such as a diary or account book, statement of expense, or similar record, in which each element of the expenditure is recorded at or near the time of the expenditure. Petitioner failed to present any documentary evidence in support of his claimed expenses. Thus, he has produced neither adequate records nor sufficient corroborating evidence. We, therefore, hold that he has failed to substantiate his claimed expenses. To reflect the foregoing and a concession by petitioners, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. This case is appealable to the Ninth Circuit, and we are bound to follow applicable precedents therein. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). The Ninth Circuit Court of Appeals adopted the reasoning of Kasun v. United States, 671 F.2d 1059 (7th Cir. 1982), as the applicable law in the Ninth Circuit. Neal v. Commissioner, 681 F.2d 1157 (9th Cir. 1982), affg. T.C. Memo. 1981-407. Kasun cited, with approval, the reasoning set forth in Commissioner v. Peurifoy, supra↩.